UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARGARET A. FISHER,

　　　　　　Plaintiff,

　　v.

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

　　　　　　Defendant.

Case No. C09-638-BAT

**ORDER AFFIRMING COMMISSIONER**

Plaintiff Margaret Fisher seeks judicial review of the denial of her application for disability insurance benefits and supplemental security income benefits by the Commissioner of the Social Security Administration. Dkt. 1. Fisher argues that the administrative law judge ("ALJ") erred in determining her residual functional capacity by: (1) failing to consider Fisher's suicidal ideation, (2) rejecting Fisher's testimony, (3) rejecting the medical opinions of treating physician Janine Shaw, M.D., and examining psychologist Jennifer Clarke, Ph.D., and (4) rejecting the other source opinion of mental health counselor Sondra LaVerne, LMHC. Dkt. 13. The parties have consented to determination of this case by the undersigned Magistrate Judge. Dkt. 10. For the reasons below, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

///

ORDER AFFIRMING
COMMISSIONER – 1

# I. FACTUAL AND PROCEDURAL HISTORY

Fisher is currently 52 years old, has a high school education, and has past work experience as an industrial carpenter, payroll clerk, and bookkeeper. Tr. 52, 64, 128. She last worked as a carpenter in November 2004; she also worked in February and April 2005 as a carpenter. Tr. 124, 302.

On January 20, 2005, Fisher applied for disability insurance benefits and supplemental security income benefits alleging disability as of November 1, 2004. Tr. 51-57, 276-85. Her applications were denied initially and on reconsideration. Tr. 27, 35, 288, 293. The ALJ held a hearing on April 10, 2007, and issued a decision on June 7, 2007 finding Fisher not disabled. Tr. 16-23. On September 28, 2007, the Appeals Council denied Fisher's request for review. Tr. 5. Fisher sought judicial review of that decision and on July 25, 2008, this Court reversed the decision and remanded the case for a new hearing. Tr. 344-50.

The ALJ held a second hearing on November 19, 2009 and on December 16, 2008, issued a decision finding Fisher not disabled. Tr. 330-43. On March 17, 2008, the Appeals Council issued a decision declining to assume jurisdiction and affirming the decision of the ALJ, which thus became the Commissioner's final decision. Tr. 319. Fisher now seeks judicial review of the Commissioner's final decision.

# II. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Fisher has not engaged in substantial gainful activity since November 1, 2004. Tr. 332.

At step two, the ALJ found that Fisher has the following severe impairments: hepatitis C, obesity, depression, and anxiety. *Id*.

At step three, the ALJ found that Fisher's impairments did not meet or equal the requirements one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 333.

The ALJ next found that Fisher had the residual functional capacity:

> to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), meaning she is able to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday and to stand and/or walk for 6 hours in an 8-hour workday, with no limitations with regard to pushing or pulling the above amounts. She is able to perform simple, repetitive tasks, and possibly some detailed tasks, with no interaction with the public, and no close frequent interaction with co-workers.

*Id.* at 334.

At step four, the ALJ found that Fisher is unable to perform any past relevant work. Tr. 341.

At step five, the ALJ found that considering Fisher's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Fisher can perform. Tr. 342. The ALJ accordingly found that Fisher was not disabled from November 1, 2004 through the date of the decision. Tr. 343.

### III. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ determines credibility and resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence

is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.  DISCUSSION

**A.     The ALJ's consideration of Fisher's suicidal ideation**

Fisher argues that the ALJ erred by failing to consider evidence of her suicidal ideation in determining her residual functional capacity.  Dkt. 9 at 7.

A claimant's residual functional capacity is the most she can still do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe.  *Id.* § 404.1545(a)(2).

In his first decision, the ALJ found at step two that Fisher's depression was not a severe impairment.  Tr. 19.  This Court, noting the medical evidence of Fisher's depression, including evidence of suicidal ideation, held that that this finding was in error and reversed and remanded the case.  Tr. 348-50.

At the second hearing, the medical expert noted a reference in Fisher's mental health records that Fisher had attempted suicide five times in her life, which Fisher confirmed.  The medical expert further noted that the record stated the attempts were with alcohol and pills and the last one was about two years ago.  Fisher responded, "Well, if that's what they reference as far as the act of the suicide, but no, that's not correct, and no I will not discuss that here."  Tr. 469-70.  Fisher clarified that the reference to alcohol and pills was not correct, but the date was correct.  The ALJ then questioned Fisher:

> ALJ:  How did you attempt suicide?
> CLMT [CLAIMANT]:  I'm sorry, I won't discuss it here.
> ALJ:  I can't hear you.
> CLMT:  I said, I'm sorry, I won't discuss that here.

Tr. 470.

In evaluating the credibility of Fisher's statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ stated:

> The claimant flatly refused to discuss the alleged attempts or her alleged suicidal ideation in any meaningful manner, and despite the Appeals Council's admonition to consider and discuss this issue, in light of the claimant's lack of cooperation I am accordingly unable to factor this issue in assessing her mental impairment.

Tr. 335.

In assessing the medical evidence of Fisher's suicidal ideation, the ALJ stated that "the significance of it in assessing the ability to work is not clear in any event." Tr. 340. The ALJ discussed the conflicting reports of suicidal ideation, noting that at times Fisher reported suicidal ideation to her doctors and at others she denied it. He also noted that there was no documentation of her alleged suicide attempts. The ALJ stated:

> The inconsistencies in the record regarding the symptom of suicidal ideation cannot be resolved, given the claimant's refusal to discuss the subject at the hearing. For that reason, I am unable to consider these complaints in my analysis any more than indicated, which is that such complaints are but one factor support[ing] a 12.04 diagnosis under that listing.

*Id.*

Fisher argues that the ALJ reached a conclusion first and then attempted to justify it by ignoring the evidence. Dkt. 9 at 8. She lists the references in the record to her suicidal ideation, arguing that this evidence shows that her suicidal ideation is not merely "alleged." *Id.* at 8-9. However, as noted above, the ALJ did in fact consider this evidence—as well as evidence that Fisher repeatedly denied suicidal ideation—when considering the medical evidence of Fisher's mental limitations. Rather than reaching a conclusion first, the ALJ attempted to resolve the inconsistencies in these reports but concluded he could not because of Fisher's refusal to testify

ORDER AFFIRMING
COMMISSIONER – 5

about the subject.

Fisher also faults the ALJ for finding a discrepancy between her report on October 31, 2006 of being suicidal for "quite a long time," and her reports on July 11, 2006, August 25, 2006, and September 15, 2006, denying suicidal ideation. Tr. 340; *see also* Tr. 160-61, 163, 166. Fisher posits that there is no discrepancy in these reports because a "month of having the urge to take your own life is 'quite a long time' under any standard." Dkt. 9 at 10. But the ALJ's finding that these reports are examples of inconsistencies in the record is a rational interpretation of the evidence that this Court will uphold. *Thomas*, 278 F.3d at 954.

Fisher also asserts that depression is one of the most underreported illnesses in the country. Dkt. 9 at 10. But the ALJ found that Fisher does have the severe impairment of depression. He considered her suicidal ideation as a factor supporting that finding. Tr. 340. The ALJ accounted for Fisher's depression in evaluating her residual functional capacity by limiting Fisher to simple, repetitive tasks, and possibly some detailed tasks, with no interaction with the public and no close frequent interaction with co-workers. Tr. 334. Fisher does not identify any additional limitations her suicidal ideation would impose on her residual functional capacity.

The ALJ's assessment of Fisher's suicidal ideation and its impact on her residual functional capacity was not in error. This Court will not overturn it.

**B.  The ALJ's credibility analysis**

Fisher next argues that the ALJ erred in rejecting her testimony. Dkt. 9 at 10. Evaluating a claimant's subjective symptom testimony requires two steps. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an underlying impairment or combination of impairments that could reasonably be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b),

416.929(b); *Smolen*, 80 F.3d at 1282. Once the claimant has met this test, and if there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick v. Chater*, 157 F.3d 715, 722 (9th cir. 1998). The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Smolen*, 80 F.3d at 1284.

Here, the ALJ found that Fisher's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the residual functional capacity finding. Tr. 335. The ALJ found Fisher to be not credible because she was not pursuing proper treatment for her impairments and because her reported daily activities showed no need for greater restrictions than those in the residual functional capacity finding. Tr. 336-38.

Fisher asserts that the ALJ improperly considered her lack of treatment for hepatitis C, arguing that she wanted to receive interferon antiviral therapy but was unable to do so because her depression was not under control. Dkt. 9 at 10. In September 2006, Kevin McClurg, PA-C, noted that Fisher expressed some interest in antiviral therapy, but he advised her that, because of

ORDER AFFIRMING
COMMISSIONER – 7

potential side effects, she would need to be psychiatrically clear and on antidepressant medication before starting the therapy. Tr. 161.  He encouraged her to follow through with seeing her mental health counselor.  Fisher told a behavioral health consultant in September 2006 that she was having a difficult time accepting help from the Department of Social and Health Services ("DSHS") because she did not want to deal with them.  Tr. 209.  In November 2006, PA McClurg again stated that Fisher was interested in antiviral therapy but needed to stabilize her mood.  Tr. 160.  He stated that he had made arrangements for Fisher to be seen by a behavioral health consultant the following week.

Nearly two years later, in February 2008, Janine Shaw, M.D., noted that Fisher had declined treatment for her hepatitis C and that she was "still quite depressed."  Tr. 417.  In April 2008, Dr. Shaw reported that Fisher was hoping to get DSHS approval to go forward with interferon treatment; Fisher stated she would return for mood stabilization and counseling referral if she got the approval.  Tr. 412.  Dr. Shaw reported again in September 2008 that Fisher would like treatment for her hepatitis C.  Tr. 407.  Fisher reported at the November 2008 hearing that she had not received treatment for her hepatitis C.  Tr. 468.

The ALJ found that these examples showed "an apparent disinterest . . . in improving her symptoms and functioning and therefore imply that her impairments are not as debilitating as she now claims."  Tr. 337.  The ALJ also noted that while there were some indications of lack of medical coverage in the past, Fisher did not discuss this issue at her September 2008 appointment or at the second hearing, and it is unclear why Fisher has been unsuccessful in obtaining medical coverage through DSHS.  Tr. 336.

Fisher argues that her failure to treat her hepatitis C was not a valid reason to reject her testimony when this failure stemmed from the fact that Fisher was not psychiatrically stable.

ORDER AFFIRMING
COMMISSIONER – 8

Dkt. 9 at 11.  But the ALJ also found that "there were large periods during which the claimant appears to have sought little mental health treatment."  Tr. 337.  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment is a clear and convincing reason to question a claimant's credibility.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Fisher's health care providers repeatedly informed her that pursuing treatment for her depression was a necessary preliminary step to treating her hepatitis C, yet she did not consistently pursue mental health treatment.  Fisher's failure to pursue mental health treatment directly impacted her ability to treat her hepatitis C.  Fisher's failure to pursue treatment for her hepatitis C, in conjunction with her failure to pursue mental health treatment, was a specific, legitimate reason to find her not entirely credible.[1]

Fisher also argues that the ALJ erred in finding that her daily activities were inconsistent with her claimed limitations.  Dkt. 9 at 12.  In April 2006, Fisher reported that on a typical day she got up at 4:30 and left the house by 6:30 to go to school.  She got out of school at 11:00 and ran errands.  At home, she took a nap, did laundry, did homework, and prepared simple meals.  She reported she was able to take care of her home and manage her money.  Tr. 201.  At the first hearing, she testified that she lived by herself and managed her household chores, went to the library when needed for school, and shopped for groceries every two weeks.  Tr. 305, 309.  At the second hearing, she testified that she attended school throughout the week, although she often

---

[1] Fisher also faults the ALJ for considering her failure to pursue other treatment recommendations.  *Id.* at 11.  In December 2003, Fisher refused to seek follow-up treatment after a mammogram showed numerous abnormalities and refused to seek a recommended gastro-intestinal consultation regarding her hepatitis C.  Fisher reported that she was very concerned about the cost of care and that she would be losing her insurance in the following year.  Tr. 173.  This occurred almost one year before Fisher's alleged onset date of November 1, 2004.  The Court agrees that this incident has little relevance to Fisher's current claims.  But the ALJ considered this incident along with Fisher's failure to follow treatment recommendations made during her alleged disability period.  The Court finds that any error in considering this incident was harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

ORDER AFFIRMING
COMMISSIONER – 9

missed one day a week. Tr. 459.

At the first hearing, Fisher testified that she was pursuing a two-year degree in biology. Tr. 306. She testified that at first most of her classes had been online, and she could work at her own pace and on her own schedule. She found it more "stressful" to have to attend a lab every day. Tr. 307. At the second hearing, Fisher testified that she was still attending school three-quarter time. She stated she was currently earning a 68 percent in organic chemistry and a failing grade in calculus. Tr. 458.

The ALJ found that Fisher's "own contemporaneous reports about her activities evince the need for no greater restrictions than those set forth in her residual functional capacity." Tr. 336. The ALJ found that while Fisher alleged that she did not complete many household chores as often as she should, it was clear that Fisher was able to live independently and care for herself well enough to get to school during the week. The ALJ also found that, with respect to Fisher's college courses, although Fisher reported at the second hearing that she expected to fail her classes that quarter, that testimony deserved little weight because of the complexity of the classes, chemistry and calculus. The ALJ found that this did not confirm greater vocational restrictions than those in his residual functional capacity finding. The ALJ concluded that "[n]o greater restrictions are warranted because, despite her claims of more severe limitations in social and cognitive functioning, the claimant has been successfully attending college and caring for herself independently." Tr. 337-38.

An ALJ may consider a claimant's daily activities when evaluating her credibility. *Light*, 119 F.3d at 792. The ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). But contradictions between a claimant's reported activities and his asserted limitations are an issue of

ORDER AFFIRMING
COMMISSIONER – 10

credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Fisher argues that the ALJ mischaracterized the record when he stated that she had been successfully attending college. Dkt. 9 at 12. Fisher points to her testimony that that she had not earned a two-year degree after attending school for four years, she had frequent absences, and she was receiving failing grades in some classes. The ALJ acknowledged this testimony, limiting Fisher to simple and repetitive tasks and limited social contact because of it, but found that it did not show a need for restrictions greater than the ones he imposed. Tr. 336, 337-38. The ALJ's finding that Fisher's struggles in attending college do not demonstrate an inability to perform less complex work is a rational interpretation of the evidence.

Fisher also asserts that her ability to "live independently" is not a reason to find her not fully credible. Dkt. 9 at 13. Fisher is correct in that a claimant need not live in a nursing home in order to be found disabled. But Fisher consistently reported that she was able to manage her household chores, even if with some difficulty, and that she was able to get herself to school during the week and perform other errands as necessary. The ALJ's finding that these daily activities were inconsistent with Fisher's claimed level of impairment is a rational interpretation of the evidence.

In sum, the Court finds that the ALJ gave clear and convincing reasons, supported by substantial evidence, to find Fisher not fully credible.

**C.     The ALJ's analysis of the medical opinions**

Fisher next argues that the ALJ improperly rejected the opinions of treating physician Janine Shaw, M.D., and examining psychologist Jennifer Clarke, Ph.D. Dkt. 9 at 13, 15.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-

ORDER AFFIRMING
COMMISSIONER – 11

examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating physician's opinion is not contradicted by another physician, the ALJ may reject it only for "'clear and convincing reasons.'" *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where a treating physician's opinion is contradicted, the ALJ may not reject it without providing "'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes*, 881 F.2d at 751. The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 f.2d 418, 421-22 (9th Cir. 1988)).

**1. Dr. Shaw**

In May 2006, Dr. Shaw completed a physical evaluation of Fisher, in which she opined that Fisher was capable of performing sedentary work. Tr. 204. In November 2006, Dr. Shaw wrote a letter in which she opined that Fisher was "struggling emotionally" and actively suicidal, and that she was disabled due to her major depression combined with the need for interferon therapy for hepatitis C. Tr. 228. Dr. Shaw opined that with respect to her physical impairments, Fisher has trouble with standing, lifting, carrying, and handling objects because of her general fatigue associated with hepatitis C; Dr. Shaw opined that with respect to her mental limitations, given the degree of major depression, Fisher would be significantly impaired in her ability to reason, make decision, have successful social interactions, maintain concentration, and tolerate stress. *Id.*

The ALJ gave Dr. Shaw's May 2006 opinion very little weight because there was no

support for the restriction to sedentary work in either the report or Dr. Shaw's treatment notes, the limitation to sedentary work was at odds with Fisher's actual functioning, and the limitation was significantly greater than that opined by examining doctor Gary Gaffield, D.O. Tr. 338. The ALJ gave Dr. Shaw's November 2006 opinion as to Fisher's physical impairment very little weight because it was not specific enough to be of any probative value and because there was no support for any degree of manipulative limitation. *Id.* The ALJ agreed to some extent with Dr. Fisher's November 2006 opinion as to Fisher's mental limitations, and thus limited Fisher to simple and repetitive tasks and limited social contact, but disagreed that Fisher was significantly impaired in her ability to reason, as shown by her relative success in her college courses. Tr. 339. The ALJ also found that the record did not support Dr. Shaw's assertion that Fisher was actively suicidal, noting that Dr. Shaw's treatment notes from the date referred to in the letter showed only that Fisher reported having been suicidal for some time, denied having a plan, and reported looking forward to her schooling. Tr. 339-40.

Fisher asserts that the ALJ erred in finding that Dr. Shaw's opinion was unsupported by the record, arguing that Dr. Shaw's treatment notes do in fact support her opinion that Fisher can only perform sedentary work. Dkt. 9 at 14. She points to Dr. Shaw's note that lab tests showed a viral load of greater than 3,000,000 copies, and asserts that Dr. Shaw conducted numerous physical evaluations of Fisher, noted her observations of Fisher, and reviewed Fisher's lab results.

In her May 2006 opinion, Dr. Shaw noted that liver function tests had been done the day she completed the report. Tr. 205. The results of that testing showed "Hepatitis C Quantitation 3,380,000." Tr. 269. In her May 22, 2006 treatment note, Dr. Shaw noted these lab results and stated with respect to Fisher's hepatitis C that the "patient is symptomatic." Tr. 171. But she

provided no discussion of how Fisher's viral load affects her functioning or any further evaluation of Fisher's symptoms. A review of Dr. Shaw's other treatment notes shows that they also fail to discuss any functional limitations in standing, lifting, carrying, or handling objects caused by Fisher's hepatitis C or any other impairment. *See* Tr. 232, 239, 247, 253, 407-420, 424-30. An ALJ may reject a treating physician's opinion that is not supported by the doctor's own medical records. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ's finding that Dr. Shaw's treatment notes provide no support for her opinion limiting Fisher to sedentary work or that she is impaired in her ability to handle objects was a specific and legitimate reason, supported by substantial evidence, to give that opinion little weight.

Fisher argues that there is no evidence that Fisher's actual functioning was at odds with Dr. Shaw's opinion. But, as discussed above, the ALJ rationally found that Fisher's daily activities were inconsistent with her claimed limitations. This inconsistency was a specific and legitimate reason, supported by substantial evidence, to give Dr. Shaw's opinion little weight.

Fisher also argues that the ALJ erred in finding Dr. Shaw's November 2006 opinion not specific enough to be of probative value. Fisher asserts that the opinion detailed her limitations and gave specific reasons for them. But the letter contains no more than a list of Fisher's diagnoses, an explanation of the reason Fisher cannot receive the indicated treatment for her hepatitis C, Dr. Shaw's opinion that Fisher is disabled and unable to maintain employment, and Dr. Shaw's opinions about Fisher's physical and mental limitations. Tr. 228. The letter gives no additional details or explanations for the limitations Dr. Shaw opines. An ALJ may reject a treating physician's opinion that is conclusory and unsupported. *Bayliss*, 427 F.3d at 1216. In addition, the ALJ need not give any special consideration to opinions on issues reserved to the Commissioner, including opinions that a claimant is disabled. 20 CFR §§ 404.1527(e),

416.927(e). The conclusory nature of this opinion was a specific and legitimate reason, supported by substantial evidence, for giving this opinion little weight.

Fisher also argues that the ALJ erroneously substituted his judgment for that of Dr. Shaw concerning Fisher's suicidal ideation. Dkt. 9 at 15. The ALJ found that, while Dr. Shaw opined in November 2006 that Fisher was actively suicidal, the record does not support that statement. Tr. 339. Dr. Shaw's treatment note from the day Dr. Shaw referred to in her November 2006 opinion state that Fisher reported being suicidal for "quite a long time," denied having a plan, and reported that the only thing she was looking forward to was her schooling. Tr. 239. Dr. Shaw stated that Fisher declined to return to the clinic the following day for a behavioral health appointment, but Fisher assured the doctor that she would go to the emergency room "if she becomes actively suicidal." *Id.* This discrepancy was a specific and legitimate reason for the ALJ to reject Dr. Shaw's opinion.

In sum, the ALJ did not err in evaluating Dr. Shaw's opinion.

**2. Dr. Clarke**

Dr. Clarke examined Fisher in August 2007 and February 2008. Tr. 376-83. In August 2007, she opined that Fisher had moderate to marked impairment in social functioning and her ability to perform routine tasks. Tr. 381-82. Her February 2008 opinion was similar. Tr. 377-78. The ALJ gave Dr. Clarke's opinion little weight because "it is clear from the forms that the assessments were based solely on the claimant's subjective complaints and presentation" and because Fisher's "actual functioning shows that she is not as limited as implied by this recitation of her subjective complaints." Tr. 341.

Fisher argues that, contrary to the ALJ's finding, Dr. Clarke did not rely on Fisher's subjective complaints only, but also relied on her observations as a trained psychologist. Dkt. 9

at 15-16.  Dr. Clarke discussed Fisher's clinical presentation, including the fact that Fisher presented with a sad affect and depressed mood and was tearful and somewhat labile.  *E.g.*, Tr. 376, 378.  But Dr. Clark also listed numerous subjective complaints by Fisher, including low energy, difficulty making decisions, social withdrawal, and suicidal ideation.  *E.g.*, Tr. 382.  The opinions did not indicate that Dr. Clarke relied on any other medical evidence in forming her opinions.  The ALJ's finding that Dr. Clarke's opinion was largely based on Fisher's subjective complaints was a rational interpretation of the evidence.  And an ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  As discussed above, the ALJ properly found Fisher not entirely credible.  This was a specific and legitimate reason to give Dr. Fisher's opinion little weight.

In addition, as discussed above, the ALJ properly found that Fisher's reported daily activities were inconsistent with the level of claimed impairment.  An ALJ may give little weight to a doctor's opinion that is inconsistent with the record.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).  This was another specific and legitimate reason to give little weight to Dr. Clark's opinion.

In sum, the ALJ did not err in evaluating Dr. Clarke's opinion.

**D.   The ALJ's analysis of other source opinions**

Fisher argues that the ALJ erred in evaluating the opinion of mental health counselor Sondra LaVerne, LMHC.  As a counselor, Ms. LaVerne is not an acceptable medical source.  *See* 20 C.F.R. § 404.1513(a) ("acceptable medical sources" include licensed physicians and psychologists).  The ALJ may evaluate opinions of other medical sources using the same factors applied to evaluate medical opinions of acceptable medical sources.  SSR 06-03p.  These factors

ORDER AFFIRMING
COMMISSIONER – 16

include the length and frequency of the treating relationship, how consistent the opinion is with other evidence, the evidence the source presents to support the opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment, as well as any other relevant factors. *Id.*; *see also* 20 C.F.R. § 404.1527(d). But the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. SSR 06-03p. The ALJ must give germane reasons for rejecting opinions from other sources that are not acceptable medical sources. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Ms. LaVerne conducted a mental health assessment of Fisher on September 4, 2008. Tr. 390-98. Ms. LaVerne assigned Fisher a Global Assessment of Functioning ("GAF") score of 45 "based on the following reported information: Margaret is depressed, has recently had suicidal thoughts, and has a history of multiple suicide attempts. She is isolating from others and has a limited social support network. Margaret has Hepatitis C, which impacts both her physical and mental health." Tr. 391. A GAF score of 45 indicates serious symptoms or serious impairment in social, occupational, or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Am. Psychiatric Ass'n 1994).

The ALJ considered this GAF score and its implications with respect to Fisher's residual functional capacity, but declined to give it much weight because Fisher mental status examination at the time of the assessment was essentially normal, other than the subjective complaints noted. Tr. 340. Fisher argues that her mental status exam was not normal, pointing to Ms. LaVerne's findings that she had a depressed and anxious mood, limited abstract cognitive functioning ability, and decreased sleep and appetite. But Ms. LaVerne found Fisher's mental status to be normal in every other respect. Tr. 396. The conflict between Fisher's essentially

normal mental status examination and her subjective reports to Ms. LaVerne is a germane reason to give Ms. LaVerne's GAF score little weight. The ALJ did not err in evaluating Ms. LaVerne's opinion.

## V.  CONCLUSION

The ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 22nd day February, 2010.

/s/ Brian A. Tsuchida

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING
COMMISSIONER – 18